UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**WILLIAM BRAYLOCK,**            Case No. 3:11 CV 869

    Petitioner,            Judge James G. Carr

  v.            REPORT & RECOMMENDATION

**KEITH SMITH, WARDEN**,

    Respondent.            Magistrate Judge James R. Knepp II

### INTRODUCTION

Petitioner William Braylock, a prisoner in state custody, was convicted by an Ohio jury of voluntary manslaughter with a firearm specification and sentenced to twelve years imprisonment. After his state appeals proved unsuccessful, he filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent Keith Smith, Warden of the Toledo Correctional Institution, filed a Return of Writ (Doc. 7), and Petitioner filed a Traverse (Doc. 11). This matter was referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated August 5, 2011). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background in *State v. Braylock*, 2010 Ohio 4722, ¶¶ 8–13 (Ohio Ct. App. 2008):

> [¶ 8] Appellant, his sister, brother-in-law, niece, and nephew reside in appellant's house, which is located at 2510 Lawrence Avenue in Toledo, Lucas County, Ohio. A gang, known as the "Bloods," is active in this area. On February 21, 2008, four members of the Bloods, including the decedent, Christopher Ross, invaded appellant's home in search of weapons. Two of the members, not Ross, engaged in a fight with appellant. The four then fled the home. After appellant and his family

reported the incident to police officials, they received a number of threatening calls.

[¶ 9]  On March 3, 2008, a group of Bloods gathered on a corner of Delaware and Lawrence near the home of Anthony Moore and his grandmother to mourn the death of Theodore Wiggins, a gang member who was killed on the previous evening. Christopher Ross, who was 17 years old at the time, was among that group. Appellant was seated on the porch of his home which is "cattycorner" to and on the other side of Lawrence from Moore's residence. According to Moore, William Braylock came down to the corner where the group was standing and instigated a fight between his nephew and Ross. After Moore spoke with him, appellant returned to his home. At some point after the first incident, Braylock came out of his house and stood on the porch holding a weapon that was described as a "long gun" or "big gun." He then went back into the house.

[¶ 10]  Approximately two hours after the fight, Braylock again came out of his home wearing a "hoodie" jacket. According to Tyree Daniels, who was part of the group standing in front of Moore's home, appellant walked to the corner of Lawrence and Delaware, turned left on Delaware, and started heading toward Collingwood Avenue. He then stopped a "couple of feet from Lawrence and Delaware." Daniels was worried because appellant had his hand inside his jacket; therefore, he crossed the street and approached him. Tyree talked to Braylock and asked him to "not let nothing happen because we had just lost somebody and we ain't need no extra, extra garbage going around." Anthony Moore also walked over and joined them. Appellant told them he did not want any "problem," but he was "going to protect his family." At that point, Daniels believed that everything was "copasetic."

[¶ 11]  Appellant's niece, however, came out of the house with a baseball bat, stood next to her uncle, and began arguing with the crowd standing in front of Moore's house. Part of the crowd, which included Christopher Ross, started to "rush" across the street toward Daniels, Moore, Blaylock, and his niece. Blaylock pulled a handgun out of his jacket, and the crowd turned and started to run back across the street. Appellant fired the gun twice. The first bullet struck Christopher Ross in his left buttock as he was turning to run away. Ross fell in the street. When he got up, the second bullet struck him in the back, and he fell again. Ross was rushed to the hospital where he was pronounced dead. After the shooting, Braylock returned to his home, changed his clothing, and left, taking the .38 caliber handgun with him.

[¶ 12]  At appellant's trial, the testimony of Cynthia Beisser, M.D., a forensic pathologist, revealed that after the first bullet entered through the decedent's left buttock, it passed through his thigh, severing the femoral vein. The second bullet entered the left side of Ross's back, then passed through and damaged a number of internal organs, including his spleen, before passing through his heart and aorta and lodging in the muscles on the right side of his chest. Dr. Beisser opined that both wounds were potentially fatal wounds.

> [¶ 13] Based upon the foregoing, the jury found appellant guilty, and he was sentenced to nine years in prison for the violation of R.C. 2903.03, plus an additional mandatory and consecutive three years in prison on the firearm specification.

These factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Petitioner does not challenge this recitation of the facts.

## PROCEDURAL BACKGROUND

Petitioner timely appealed his conviction and sentence to the Sixth District Court of Appeals, raising the following six assignments of error:

- Braylock's conviction for voluntary manslaughter was against the manifest weight of the evidence because the record does not support the jury's finding that Braylock acted with 'knowingly' intent.

- The trial court abused its discretion by granting the state's motion in limine that excluded key incidents critical to Braylock's claim of self defense, and by allowing the state to make repeated references to an assault rifle that were highly prejudicial and not probative of any issue.

- Braylock met his burden to establish he was acting in self-defense. Further, his right to due process of law, equal protection, and to not be compelled to testify were violated by Ohio's self defense law.

- There was insufficient evidence to support a conviction for voluntary manslaughter and the trial court should have granted his Rule 29 motion.

- The trial court abused its discretion by imposing such a lengthy sentence, particularly because it appears to be repudiated by the jury verdict on a lesser included offense.

- The trial court abused its discretion by refusing to give an instruction for reckless homicide and by giving the jury an instruction regarding flight.

*State v. Braylock*, 2010 Ohio 4722, at ¶¶ 2–7. In March 2010, the court of appeals remanded the case *sua sponte* in order for the trial court to enter judgment of conviction in conformity with *State*

3

*v. Baker*, 119 Ohio St. 3d 197 (2008) and Ohio Criminal Rule 32(C).  (Doc. 7-10). The trial court then properly entered judgment of conviction against Petitioner and the case went back to the court of appeals, which found each of Petitioner's assignments of error not well-taken.  *Braylock*, 2010 Ohio 4722, at ¶¶ 14–48.

Petitioner then timely filed an appeal to the Ohio Supreme Court, raising the same issues as he had before the court of appeals. (Doc. 7-14, at 2).  The Ohio Supreme Court dismissed Petitioner's appeal as not involving any substantial constitutional question (Doc. 7-16), prompting Petitioner to timely file this habeas action (Doc. 1).  Petitioner now raises four grounds for relief:

- **Ground One:** The State Court judgments and convictions against Petitioner are void because his convictions and sentences were secured in violation of liberties guaranteed by the Fifth and Fourteenth Amendment[s] of the U.S. Const. when there was insufficient evidence to support a conviction for voluntary manslaughter and the trial court should have granted Petitioner's Rule 29 motion;

- **Ground Two:** The State Court judgments and convictions against Petitioner are void because his convictions and sentences were secured in violation of liberties guaranteed by the Fifth and Fourteenth Amendment[s] of the U.S. Const. Because Petitioner met his burden in establishing he acted in self defense and his right to due process of law, equal protection, and to not be compelled to testify were violated by Ohio's self defense law;

- **Ground Three:** The State Court judgments and convictions against Petitioner are void because his convictions and sentences were secured in violation of liberties guaranteed by the Fifth and Fourteenth Amendment[s] of the U.S. Const. when the Trial Court abused its discretion by granting the State's motion in limine that excluded key incidents critical to Petitioner's claim of self defense, and by allowing the State to make repeated references to an assault rifle that were highly prejudicial and not probative of any issue; and

- **Ground Four:** The State Court judgments and convictions against Petitioner are void because his convictions and sentences were secured in violation of liberties guaranteed by the Fifth and Fourteenth Amendment[s] of the U.S. Const. when the Trial Court abused its discretion by refusing to give an instruction for reckless homicide and by giving the jury an instruction regarding flight.

(Doc. 1, at 7, 9, 12, 15).

## DISCUSSION

### Standard of Review

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

### Procedural Default

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

One way procedural default occurs is when the last state court rendering a decision makes

a "plain statement" basing its judgment on a procedural bar. *Harris v. Reed*, 489 U.S. 255, 265 (1989). That is, if, due to the petitioner's failure to comply with a procedural rule, the state court declines to reach the merits of an issue, and the state procedural rule provides adequate and independent grounds for precluding relief, then the issue is procedurally defaulted unless there was actual prejudice by the alleged constitutional error and "cause" for not following the procedural rule, *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), or "that failure to consider the claims will result in a fundamental miscarriage of justice", *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

But "[t]he mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)); *see also Coleman*, 501 U.S. at 735 (holding the last state court rendering a reasoned judgment must "clearly and expressly" state its judgment rests on a procedural bar for procedural default to apply).

If the State argues a petitioner has procedurally defaulted his claims, the court must conduct the following four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

6

*Maupin*, 785 F.2d at 138.

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This is a power derived from the court's equitable discretion. *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'" *Id.* at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 492–493 (1976)).

Here, Respondent argues two of Petitioner's arguments are barred by procedural default: (1) Petitioner's contention that Ohio's self-defense statute violates his Fifth Amendment right to self-incrimination (part of Ground Two); and (2) Petitioner's argument that his Due Process rights under the Fourteenth Amendment were violated when the trial court granted the State's motion in limine and denied Petitioner's (Ground Three). (Doc. 7, at 11–18). The court of appeals found Petitioner waived the first argument by not raising it at the trial court at all and waived the second by not objecting to the introduction of evidence during trial, despite filing a motion in limine prior to trial. *Braylock*, 2010 Ohio 4722, ¶¶ 14–19, 23. The court of appeals also noted Plaintiff's self-defense argument was foreclosed by *Martin v. Ohio*, 480 U.S. 228 (1987), which upheld the constitutionality of Ohio's self-defense law.

The undersigned recommends the Court find Petitioner procedurally defaulted both of these arguments. Petitioner failed to follow state procedural rules that the Ohio court of appeals actually applied in deciding his appeal. *See id.* As the court of appeals' opinion demonstrates, the

7

procedural grounds used to dismiss Petitioner's arguments are "adequate and independent" – that is, practices that were "firmly established and regularly followed" at the time they were applied. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991); *see Braylock*, 2010 Ohio 4722, ¶¶ 14–19, 23 (citing cases); *see also Himes v. Miller*, 2011 U.S. Dist. LEXIS 77035, at *19 (N.D. Ohio 2011) (finding "the waiver doctrine constitutes an adequate and independent state ground upon which the State court can foreclose relief"), *R&R adopted by* 2011 U.S. Dist. LEXIS 77036 (N.D. Ohio 2011).

Furthermore, Petitioner has not shown that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 754. To show cause, a petitioner must demonstrate "some objective factor external to the defense" impeded his efforts to raise the issue as required by each relevant procedural rule. *Id.* at 753. On this point, Petitioner offers no reasons at all. (*See* Doc. 11, 20–24).

The basis for Petitioner's arguments are not new to him; indeed, the underlying facts as to each argument were known to Petitioner and his counsel at the time of trial. Therefore, Petitioner could have both raised the constitutionality of Ohio's self-defense law, as well as his objections to the introduction of the State's evidence, at that time, but did not. Nothing in the record suggests there was something "external to the defense" that prevented Petitioner from raising these arguments at trial.

Finally, Petitioner has neither argued nor otherwise demonstrated that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice", or in other words, that the alleged error "probably resulted in the conviction of a factually innocent person." *Pudelski v.*

8

*Wilson*, 576 F.3d 595, 606 n.2; *see also Schlup v. Delo*, 513 U.S. 298, 327(1995). Petitioner's arguments are based on legal insufficiency, not factual innocence, and that is not enough to clear the fundamental miscarriage of justice hurdle. *See id.*

**The Merits**

Petitioner's remaining arguments were fairly presented to the state courts and their merits addressed by the court of appeals. Each will be addressed in turn.

*Ground One*

In Ground One, Plaintiff maintains that his due process rights were violated because there was insufficient evidence presented at trial for a conviction for voluntary manslaughter, and therefore the state court should have granted his Criminal Rule 29 motion for acquittal. (Doc. 1, at 7).

Ohio Criminal Rule 29 permits a trial court to grant acquittal if the evidence is insufficient to prove each element beyond a reasonable doubt. In a habeas action challenging the sufficiency of evidence, relief is granted only if, based on the evidence presented at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). A habeas court resolves all conflicting inferences in favor of the prosecution and cannot weigh credibility of witnesses. *Id.* at 319. If any rational trier of fact could find the defendant guilty, the court must not overturn the conviction. *Id.*

Voluntary manslaughter occurs when"[1] a person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, . . . [2] knowingly [3] cause[s] [4] the death of another . . . ." R.C. 2903.03(A). "A person acts knowingly,

regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).

> The appellate court found the following facts supported Petitioner's conviction:
>
> Here, the facts of the case reveal that appellant was angry with Christopher Ross and other members of the Bloods because of the home invasion, that he urged his nephew to engage in a fight with Ross earlier on the day of the shooting, that he subsequently appeared on his porch with a long gun, and that he deliberately walked to the corner of Lawrence and Delaware carrying a concealed handgun. Once a portion of the crowd, including Ross, started to come cross the street, he pulled out the handgun and shot twice into the fleeing individuals aware of the fact that he could probably kill someone, including Christopher Ross.

*Braylock*, 2010 Ohio 4722, at ¶ 29.

The evidence presented at trial was sufficient for a trier of fact to return a verdict of guilty on the charge of voluntary manslaughter. The evidence established Petitioner was angry at Christopher Ross and the Bloods because of the home invasion (element one).  Furthermore, a rational trier of fact could adduce, based on the circumstantial evidence provided at trial, Petitioner "knowingly" caused the death of Ross (element two).  By shooting into a crowd of fleeing people, Petitioner had to be aware he would probably kill someone.

A reasonable jury could have found Petitioner guilty of voluntary manslaughter beyond a reasonable doubt, based on the evidence presented at trial and outlined above. *Jackson*, 443 U.S. at 324. Therefore, the appellate court's decision was neither contrary to nor an unreasonable application of federal law.

### *Ground Two*

In the remaining portion of Ground Two, Petitioner claims he met his burden at trial in establishing he acted in self-defense when he shot Christopher Ross.  Under Ohio law, self-defense

is an affirmative defense a defendant must establish by a preponderance of the evidence. *Horton v. Warden, Trumbull County Correctional Inst.*, 767 F. Supp. 2d 833, 838 (N.D. Ohio 2011) (citing *State v. Melchior*, 56 Ohio St. 2d 15, 381 N.E.2d 195, 199 (1978)). This argument, however, is not a cognizable habeas claim.

The Sixth Circuit has held that the federal "due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime" as defined by the State. *See Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999) (holding that the Ohio prisoner "did not effectively challenge the sufficiency of evidence in support of the essential state law elements of murder" by "only fault[ing] the jury's refusal to credit his proffered affirmative [self-defense] excuse or justification for th[e] purposeful killing"); *see also Booth v. Carlton*, 1997 U.S. App. LEXIS 5859 (6th Cir. 1997) (finding no merit to claim challenging the sufficiency of evidence based on proof that the petitioner had "acted in self-defense . . . because the due process guarantee . . . extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense"); *Crawford v. Warden, Warren Corr. Inst.*, 2011 U.S. Dist. LEXIS 127554, at \*30 (S.D. Ohio 2011) (rejecting petitioner's assertion he was entitled to habeas relief because he had established self-defense at trial).

Because, under Ohio law, the issue of whether Petitioner acted in self-defense does not affect the elements of voluntary manslaughter, his self-defense claim cannot give rise to a cognizable habeas claim. *Booth*, 1997 U.S. App. LEXIS 5859, \*5–6; *Crawford*, 2011 U.S. Dist. LEXIS 127554, at \*30.

11

*Ground Four*

In Ground Four, Petitioner claims the trial court "abused its discretion by refusing to give an instruction for reckless homicide and by giving the jury an instruction regarding flight." (Doc. 1, at 15). The trial court gave instructions on murder (for which Petitioner was charged), and the lesser-included offenses of involuntary manslaughter and voluntary manslaughter. (Doc. 7-20, at 179). Petitioner argues that a reckless homicide instruction should have also been given as a lesser-included offense of murder. He also argues there was no basis for the trial court's flight instruction – a "consciousness of guilt" instruction related to Petitioner fleeing the scene after the shooting. These errors, says Petitioner, violated his right to due process.

The Supreme Court has held that the failure to give a lesser-included offense instruction can violate due process where "the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction." *See Beck v. Alabama*, 447 U.S. 625, 638 (1980). However, "while due process can require an instruction on lesser offenses that are necessarily included in the greater offense, due process does not require an instruction on a lesser-included offense if the evidence does not support such an instruction." *Bowling v. Parker*, 344 F.3d 487, 500 (6th Cir. 2003). "Instead, 'a *Beck* instruction is only required when there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense, but not the greater.'" *Id.* (quoting *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001)).

This constitutional standard is nearly identical to the Ohio requirement applied by the court of appeals in Petitioner's case: "[a]n instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." *Braylock*, 2010 Ohio 4722, at ¶ 33 (quoting *State v.*

*Carter*, 89 Ohio St. 3d 593, 600 (2000)). The court of appeals concluded the evidence did not support both an acquittal of the murder charge and a finding of guilty on the reckless homicide charge. *Braylock*, 2010 Ohio 4722, at ¶¶ 34–35.

Given the procedural posture of this case, and the deferential standard this Court must apply, the question becomes whether the state court's application of the *Beck* rule to the facts of Petitioner's case was objectively unreasonable. *See Campbell*, 250 F.3d at 543. To make this determination, the Court must look to the definitions of "murder" and "reckless homicide" under Ohio law, which was summarized by the court of appeals:

> the difference between murder and reckless homicide is the mens rea. R.C. 2903.02(A) defines "murder" as "purposely causing the death of another . . . ." R.C. 2903.041(A) characterizes reckless homicide as "recklessly causing the death of another . . . . "Purposely" is defined in R.C. 2901.22(A), which reads, in pertinent part: "A person acts purposely when it is his specific intention to cause a certain result. . . ." An individual acts recklessly when, "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22.

*Braylock*, 2010 Ohio 4722, at ¶ 34. The court of appeals also summarized the evidence against Petitioner as it related to his mens rea:

> To repeat, appellant first incited a physical fight between his nephew and Christopher Ross, who had previously invaded appellant's home. Appellant then intentionally placed a firearm in his jacket before positioning himself across the street from the group of individuals that included Christopher Ross. As the group of individuals came toward him, he pulled out the handgun. Then, despite the fact that the group retreated, Braylock pointed the gun with the specific intention to shoot someone. The bullets from that gun hit Ross in the back and left buttock causing fatal injuries.

*Id.* at ¶ 35.

Based on this undisputed evidence, this Court cannot say the state court's conclusion that Petitioner was not entitled to a reckless homicide instruction was an unreasonable application of

13

clearly established federal law. Contrary to Petitioner's assertions, this evidence suggests he acted in a purposeful way, rather than a reckless one, particularly in light of the fact he shot into a crowd of fleeing people. *Braylock*, 2010 Ohio 4722, at ¶ 11; Doc. 7-18, at 24–25. No reasonable juror, therefore, would have acquitted him of murder and convicted him of reckless homicide.

Petitioner also claims the trial court erred in providing a "flight" instruction to the jury. That instruction stated as follows:

> Now, with regards to consciousness of guilt. Testimony has been admitted indicating that the defendant changed his appearance as he fled the scene. You're instructed that this conduct alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support that the defendant changed his appearance or fled the scene, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.

*Braylock*, 2010 Ohio 4722, at ¶ 37. The court of appeals found the trial court did not abuse its discretion in giving this instruction because it accurately reflected the evidence at trial. *Id.* at ¶ 38.

Petitioner does not argue he did not in fact leave the scene after firing two shots, nor could he; Petitioner's sister established this fact at trial, just as the court of appeals noted. (Doc.7-19, at 838). Instead, he seems to suggest the instruction was unwarranted given his explanation for leaving the scene: personal safety and the safety of his family. (Doc. 7-8, at 31; Doc. 11, at 25). The instruction, however, took Petitioner's explanation into account by stating "[i]f you find that the facts do not support that the defendant changed his appearance or fled the scene, *or if you find that some other motive prompted the defendant's conduct*, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose." *Braylock*, 2010 Ohio 4722, at ¶ 37 (emphasis added). Petitioner's explanation made it into evidence through his sister's testimony. (Doc. 7-19, at 838).

Because this instruction accurately reflected the evidence presented at trial, did not impermissibly shift the burden onto Petitioner to explain his conduct, and simply instructed the jury how it could treat that evidence in determining Petitioner's guilt or innocence (including ignoring it altogether), Petitioner has not demonstrated the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

## CONCLUSION AND RECOMMENDATION

The state court decisions here were not contrary to clearly established federal law, nor were they unreasonable applications of it. For the foregoing reasons, the undersigned recommends the Petition (Doc. 1) be dismissed.

                                                                                  s/James R. Knepp II
                                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).